The CITY OF LANCASTER, OHIO,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent,

Ohio Fuel Gas Company,
Dayton Power and Light Company,
Intervenors.

No. 13552.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 24, 1957.

Decided Dec. 12, 1957.

Petitions for Rehearing Denied
March 13, 1958.

Mr. Robert U. Hastings, Jr., Lancaster, Ohio, of the bar of the Supreme Court of Ohio, pro hac vice, by special leave of Court, with whom Messrs. Julian de Bruyn Kops and Roy D. Boucher, Dayton, Ohio, were on the brief, for petitioner. Mr. Frederick C. Wellington, Dayton, Ohio, entered an appearance for petitioner.

Mr. Howard E. Wahrenbrock, Solicitor, Fed. Power Commission, with whom Messrs. Willard W. Gatchell, Gen. Counsel, Fed. Power Commission, and C. Louis Knight, Atty., Fed. Power Commission, were on the brief, for respondent.

Mr. E. H. Laylin, Columbus, Ohio, of the bar of the Supreme Court of Ohio, pro hac vice, by special leave of Court, Donald B. Leach, Columbus, Ohio, with whom Mr. John Peyton Randolph, Washington, D. C., was on the brief, for intervenor Ohio Fuel Gas Co.

Messrs. Julian de Bruyn Kops and Roy D. Boucher, Dayton, Ohio, for intervenor Dayton Power & Light Co.

Before WILBUR K. MILLER, DANAHER and BASTIAN, Circuit Judges.

**WILBUR K. MILLER, Circuit Judge.**

The City of Lancaster, Ohio, which engages in the retail distribution of natural gas, has for many years purchased most of its gas supply from The Ohio Fuel Gas Company. September 18, 1953, the latter tendered to the Federal Power Commission for filing a new tariff which, as later amended, provided for increased wholesale rates and for a long-term contract demand rate form to be applied to sales made thereafter to Ohio Fuel's distribution company customers, including Lancaster.[1]

Under § 4(e) of the Natural Gas Act,[2] the Commission suspended the proposed tariff (which later was permitted to become effective March 1, 1954, subject to refund) and ordered a hearing "concerning the lawfulness of the rates, charges, classifications and services" set forth therein. Such a hearing, convened in 1954 and immediately recessed, did not really begin until June 13, 1955. Lancaster intervened and vigorously opposed the new filing, particularly the long-term contract demand element. The hearing was closed December 9, 1955, after some 36 days of testimony.

The examiner, in a decision issued April 2, 1956, rejected the rate levels and the contract demand rate form proposed by Ohio Fuel. He prescribed, subject to Commission review, what he considered just and reasonable rates for two periods: (a) "The first being 1954 for which costs are known and in our record, and [(b)] the second being the present and future periods [*sic*] which began January 1, 1955, costs for which must be developed *insofar as this record is concerned* on the basis of the data for 1954 which is used as the test year." (Emphasis added.)

The Commission issued an order June 29, 1956, which reversed the examiner's decision in large part. It allowed a rate

of return of 6¼ per cent, and fixed a rate of $1.65 per Mcf of demand and 32.45¢ per Mcf of commodity on a contract demand basis, to take effect as of the July, 1956, billing month.

This caused the refund period, which had begun March 1, 1954, to end with the June, 1956, billing month. For the first ten months of that period, for which the record showed the actual cost of service, the Commission prescribed a rate of $2.08 per Mcf of demand and 31.52¢ per Mcf of commodity, on an average demand basis. Since the record did not show actual cost of service for the remainder of the refund period, i. e., from January 1, 1955, to the end of the June, 1956, billing month, the Commission used a cost figure reached through the same allocation and classification procedures employed in computing the actual cost of service in 1954. On the costs so determined, and again on an average demand basis, a rate of $2.15 per Mcf of demand and 32.43¢ per Mcf of commodity was prescribed to be applied from January 1, 1955, to the end of the refund period.

After the order of June 29, 1956, was entered, Lancaster seasonably filed an application for rehearing which was denied by the Commission August 16, 1956. In its petition for review, the City complains that by approving the contract demand rate form, the Commission has unlawfully altered its pre-existing service agreement with Ohio Fuel without its consent. The contract demand component is said to be otherwise unlawful in the circumstances of this case.

Lancaster also attacks the rates fixed for the year 1955, a part of the refund period, because the Commission computed the cost of service for that year by projecting the 1954 figures, although ac-

1. Under this rate form, determination of billing demand would be based on the customer's single day peak during the twelvemonth ending with the current billing month but would not be less than 90 per cent of the customer's contract demand nor more than the contract de-

mand. The customer would be required to pay for at least 90 per cent of the contract demand over the life of the service agreement,—usually 20 years.

2. 15 U.S.C.A. § 717c(e).

tual figures were available before the order was entered. It asks leave to adduce additional evidence showing "actual 1955 data for the computation of Ohio Fuel's rate base, cost of service (including 6¼ per cent rate of return) and determination of just and reasonable rates for the year 1955." Certain statistical exhibits which Lancaster desires to introduce are attached to its petition.

Decision concerning the points raised by the petition for review may depend upon the gas service contract, if any, between the parties. Lancaster mentions a service agreement and the Commission refers in its brief to "the service agreement between Ohio Fuel and Lancaster dated November 17, 1952," and purports to quote therefrom. This agreement is not in the record before us and the Commission made no finding concerning it or any other service agreement. Cf. Portsmouth Gas Co. v. Federal Power Comm., 1957, 101 U.S.App.D.C. 99, 247 F.2d 90.

■ Consequently we are unable to determine from the present record whether the order of June 29, 1956, is applicable to Lancaster, either as to rates prescribed for the refund period beginning March 1, 1954, or as to the rate schedule prescribed for use beginning with the July, 1956, billing period. The case will be remanded to the Commission for such additional hearing and proceedings as may be necessary to enable it to make findings concerning the following and any other relevant matters not previously covered: (a) whether a service contract between Ohio Fuel and Lancaster existed when the new tariff was proposed and when the order under review was entered; (b) if there was such a contract, what its terms and conditions were, and when it became and how long it remained effective.

After having made these findings and reached such conclusions therefrom as it thinks justified, the Commission should then decide whether and, if so, to what extent its order of June 29, 1956, applies to deliveries by Ohio Fuel to Lancaster made before and after its ef-

fective date. If it adheres to its original order with respect to Lancaster, we shall proceed to consider Lancaster's present petition for review, in the light of the record as supplemented. On the other hand, if the Commission modifies its order insofar as it applies to Lancaster, any party to the proceeding who is aggrieved by the order as modified may, of course, petition for review.

Remanded for further proceedings.

On Petitions for Rehearing

Before WILBUR K. MILLER, DANAHER and BASTIAN, Circuit Judges.

PER CURIAM.

In separate petitions for rehearing, the Federal Power Commission and The Ohio Fuel Gas Company contend that we have no authority to remand this proceeding to the Commission for findings as to the nature of the contract, if any, between Lancaster and Ohio Fuel. They say we are prohibited from doing so by § 19 of the Natural Gas Act [1] because, in its application to the Commission for reconsideration, Lancaster did not expressly rely upon a contract with Ohio Fuel as a basis for seeking administrative rehearing.

Yet the Commission, in its original brief, relied upon a "service agreement between Ohio Fuel and Lancaster dated November 17, 1942," and purportedly quoted §§ 2 and 3 thereof as showing that Lancaster "had consented to rate changes under Section 4(d) by agreeing to pay for gas under the then existing rate schedule 'or any effective superseding rate schedule' * * * which, of course, would be through a filing by Ohio Fuel."

■ It is quite clear that these petitioners for rehearing act prematurely. Our opinion is purely interlocutory. We have not said we intend to decide the case on the basis of the contract between Lancaster and Ohio Fuel, if there is such a contract. We simply say, "Decision concerning the points raised by the petition for review may depend upon the gas service contract, if any, between the

parties." The upshot is that petitioners for rehearing would prevent us from knowing whether there actually was a contract such as that upon which the Commission relied in argument and, if so, what its terms and conditions were. If there was such a contract it should be revealed to us, after which it will be time enough to consider the argument now advanced by petitioners under § 19, as to which argument we express no opinion.

The petitions for rehearing are denied.